NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VILMA C. GOMEZ<br><br>*Plaintiff,*<br><br>v.<br><br>CAROLYN W. COLVIN,<br>**Acting Commissioner of Social Security,**<br><br>*Defendant.* | Civil Action No. 15-7634<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Vilma Gomez's ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), of the Commissioner of Social Security Administration's ("Commissioner") denial of supplemental security income benefits ("SSI" or "Disability Benefits") to Plaintiff. For reasons set forth below, the Commissioner of Social Security's ("Commissioner") decision is **AFFIRMED**.

**I.    APPLICABLE LAW**

**A.  Standard of Review**

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision. 42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). In short, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

1

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review; it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the Commissioner's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. App'x 167 (3d Cir. 2014).

### B. Five-Step Sequential Analysis

To determine a claimant's disability, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). Step one is to determine whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If the claimant is found to be engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. §

2

404.1520(a)(4)(ii). The regulations provide that an impairment or combination of impairments is severe only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner, at step four, must ask whether the claimant has a "residual functional capacity" such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. Id. Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional capacity.'" 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364 F.3d at 503. The claimant bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

## II. BACKGROUND

### A. Procedural History

On November 20, 2012, Plaintiff Vilma Gomez filed an application for supplemental security income. The application was initially denied on March 7, 2013, and on reconsideration on May 9, 2013. Tr. 72. On June 11, 2013, Plaintiff filed a written request for a hearing, which was held on February 25, 2014, in Jersey City, New Jersey. Id. The ALJ determined that Plaintiff

3

was not disabled under section 1614(a)(3)(A) of the Social Security Act, and Plaintiff's application for benefits was denied on April 11, 2014. Tr. 22. The Appeals Council denied Plaintiff's request for review on April 11, 2015. Tr. 1-4. Having exhausted her administrative remedies, Plaintiff then filed the instant action on October 21, 2015. See Compl., EFC. No. 1.

**B. Factual Background**

Plaintiff is a 55-year-old woman. She has a GED, and she has not worked since 2011. Tr. 30, 36. Plaintiff previously worked as a babysitter in 2011. Tr. 30, 228. Prior to that, she worked as a credit/finance analyst at a limousine company, but stopped shortly after she tripped on concrete at work. Tr. 37. Plaintiff claims she stopped working due to spinal, respiratory, and mental health issues. Tr. 33-39, 45, 47-50, 51.

On November 20, 2012, when Plaintiff was 49 years old, she filed an SSI application, alleging disability due to spinal pain, Baker's cysts, respiratory issues, post-traumatic stress disorder, herniated discs on her neck and lower back, and asbestos exposure. Tr. 14, 74, 279, 286, 287. According to Plaintiff, a car accident in November 1998 caused her severe neck and shoulder pain and numbness. In December 1998 an MRI revealed straightening of the lumbar lordotic curve, as well as disc herniation with ventral impingement on the thecal sac. Tr. 19, 272. For treatment, Plaintiff underwent lumbosacral epidural blocks in February and April 1998. Tr. 275. During Plaintiff's February 2014 administrative hearing, she testified that the epidural shots were successful in treating her back pain. Tr. 35.

Plaintiff also claimed to have respiratory issues due to exposure to asbestos in 2006. Tr. 45-46, 47. Plaintiff does not use an inhaler, and her pulmonary function test was "much better than normal", with no reports of audible wheezes, rales, coughs, or rhonchi. Tr. 287-288. Plaintiff has not been diagnosed with asbestosis. Tr. 50-51. Additionally, Plaintiff testified that she only

4

received homeopathic treatment for her respiratory issues; however, this treatment only lasted a year and stopped three years before the administrative hearing.  Tr. 38.

Plaintiff has no history of psychiatric hospitalization or recent outpatient or inpatient psychological treatment.  Tr. 284-85.  During the administrative hearing, Plaintiff testified that she has never been under psychiatric treatment; however, she received counseling for an unknown duration following a violent incident in 1987.  Tr. 49.  Plaintiff further testified that she has had problems with anxiety since 2006.

Plaintiff relies on a niece and her mother for support.  Tr. 186.  She testified that she is able to perform household chores.  Tr. 40-41.  She lives in an apartment directly below her mother's apartment.  Tr. 52.  Plaintiff testified that her typical day consists of routines in the house and contemplation on personal issues.  Tr. 48.  Plaintiff attends religious services occasionally with her mother, sister, and niece, and maintains relationships with lifelong friends and former co-workers.  Tr. 35, 42.  She can go shopping, Tr. 40, and has basic computer skills, Tr. 36.  Plaintiff reads the Bible for enjoyment, and watches the news on television.  Tr. 53-54.  Plaintiff owns a car and is able to drive when necessary.  Tr. 33.

### C. The ALJ's Decision

Following a February 25, 2014 hearing, the ALJ denied Plaintiff's SSI claims.  Tr. 22, 72.  In an April 11, 2014 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 4, 2011, the benefits application date.  Tr. 14.  The ALJ determined that Plaintiff has the following severe impairments: cervical and lumbrosacral radiculopathy, diffusion defect, posttraumatic stress disorder (PTSD), and generalized anxiety disorder.  Id.  The ALJ concluded that Plaintiff's impairments, alone or in combination, did not meet or medically equal the severity of any of the impairments in the Listings.  Id.  The ALJ subsequently found that the

Plaintiff has the Residual Functional Capacity ("RFC") to perform sedentary word as defined in 20 C.F.R. § 416.967(a), except that she can perform postural movements (balancing, kneeling, stooping, and crouching) no more than occasionally, and can push and pull with her bilateral upper extremities no more than occasionally. Tr. 16. In addition, the work must be simple and routine, and be low-stress with only occasional decision-making, judgment, and changes in work setting. Tr. 17.

The ALJ considered Plaintiff's subjective complaints in assessing her residual functional capacity, but found that her statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not entirely credible. Tr. 18. The ALJ found that Plaintiff has past relevant work, and concluded that jobs exist in significant numbers in the national economy that Plaintiff can perform. Tr. 21. In reaching this finding, the ALJ relied on the testimony of a vocational expert. Id. Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act, and denied Plaintiff's claim for SSI benefits. Tr. 22.

### III. ANALYSIS

Plaintiff alleges that: (1) the ALJ failed to properly analyze the evidence at Step 3 and that she has the medical equivalence of the Commissioner's Listings and is thus presumptively disabled because of a combination of her physical and mental impairments, Pl.'s Br. at 16-21, ECF. No. 9; and (2) the RFC assessment is not supported by substantial evidence because the ALJ did not offer specific rationale with citation from the evidence. Pl.'s Br. at 21-25, ECF. No. 9. None of these arguments prevail because the ALJ appropriately assessed Plaintiff's impairments under applicable law and his findings are supported by substantial evidence.

6

## 1. The Plaintiff's Physical and Mental Impairments Do Not Meet or Equal a Listing

Plaintiff claims to have presented evidence consistent with medical equivalence to the pulmonary, orthopedic, and psychiatric listings. Plaintiff claims the ALJ erred by not properly analyzing this evidence at Step 3 by failing to: (i) combine Plaintiff's five acknowledged impairments at Step 3; (ii) give Plaintiff's alleged respiratory and spinal disorders adequate individual comparison with the appropriate listing for Step 3; and (iii) combine or compare alone Plaintiff's two anxiety disorders.

### i. The ALJ properly analyzed the evidence on record during Step 3

First, the ALJ properly analyzed the evidence on record during his Step 3 analysis. Plaintiff claims that the ALJ erred by not considering all of Plaintiff's impairments in combination. Pl. Br.at 19. Plaintiff primarily argues that each impairment must be individually compared to a listed impairment, and if no exact correlation can be made, the ALJ must then combine and compare Plaintiff's impairments to the listings as a whole in a discussion of medical equivalence. Id. If the impairments are unable to meet a listing, Plaintiff claims that the ALJ must sufficiently analyze the evidence and the requirements of the listings to show that proper comparisons were made, or that "no stone was left unturned." Id. The Court disagrees.

For a claimant to show that her impairment matches a listing, the impairment must meet all specified criteria. Sullivan v. Zebley, 493 U.S. 521, 532 (1990). If the impairment only meets some of the criteria, no matter how severe, it will not qualify. Id at 525. To meet the specified criteria, medical equivalence based on medical findings in evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. ss 404.1526(a), 416.926(a). Additionally, the ALJ is not required to use particular language or adhere to a particular format in conducting his analysis, but must demonstrate sufficient development of the

record and explanation of findings to permit meaningful judicial review. Pallens v. Colvin, No. 13-7350, 2015 WL 6502100 at *3 (D.N.J. Oct. 26, 2015). Here, the ALJ considered all evidence correlating to the Commissioner's Listings, and made a determination based on the evidence and the testimony of the Plaintiff. Tr. 15-16. The ALJ found that Plaintiff's alleged spinal disorder did not meet Listing 1.04[1], and that Plaintiff also did not meet criteria for Listing 12.06.[2] Id. The ALJ noted that the Plaintiff was not able to demonstrate any marked limitations with her alleged mental impairment, thus falling short of the requirements of Listing 12.06. Id. Ultimately, the Plaintiff bears the burden of proving that her impairments equal or meet the listings. Id. In this case, the ALJ ruled that the Plaintiff failed to meet this burden.

ii. The ALJ appropriately considered Plaintiff's respiratory and spinal disorders

Plaintiff claims that the ALJ erred by not giving adequate individual comparison with the appropriate listings for Step 3 in regards to Plaintiff's alleged pulmonary impairment and her radiculopathies. Plaintiff argues that the ALJ erred by not mentioning Plaintiff's diffusion

---

[1] Criteria for Listing 1.04A: Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. pt. 404, subpt. P, app. 1.

[2] The required level of severity for 12.06 disorders is met when the requirements in both A and B are satisfied. This requires medically documented findings of generalized persistent anxiety accompanied by three out of four of the following signs or symptoms: a. Motor tension; or b. Autonomic hyperactivity; or c. Apprehensive expectation; or d. Vigilance and scanning; or a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or recurrent obsessions or compulsions which are a source of marked distress; or recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; resulting in at least two of the following: Marked restriction of activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404, subpt. P, app'x 1, at 12.06.

8

defect at Step 3. However, Plaintiff admits that there is no specific medical listing regarding diffusion defect (Tr. 15.), yet Plaintiff argues that her condition equals listing 3.02c. Pl. Br. at 19-20. The record does not support this claim. Plaintiff bears the burden of proving her impairments equal or meet the listings. Pallens at 3. The ALJ found that the Plaintiff has been unable to demonstrate evidence of a chronic impairment of gas exchange due to clinically documented pulmonary disease as required by 3.02c. In fact, testing in 2013 shows "no evidence of respiratory problem." Tr. 289. Additionally, Plaintiff does not use an inhaler (Tr. 18-19), and the consultative examiner, Dr. Hoffman, found in January of 2013 that the Plaintiff was not coughing, wheezing, or having difficulty breathing- her pulmonary function test "much better than normal." Tr. 288.

As required by Pallens, the ALJ sufficiently developed the record by considering Plaintiff's subjective allegations of breathing difficulties, discussing the medical evidence relating to the impairment, and ultimately including environmental limitations to account for the alleged problem. Tr. 18-19. The ALJ noted that the Plaintiff failed to meet the burden of proving her impairments meet or equal a listing. The testing evidence Plaintiff relied upon was conducted in 2007, five years before the alleged onset date, and any symptoms of a diffusion defect were "mild". Tr. 276-77. Plaintiff argues that this "oxygen gas exchange problem" is indicative of the possibility of pulmonary fibrosis, or even potentially emphysema. Pl. Br. at 15. However, Plaintiff offers no medical evidence of either disease. As the ALJ noted in his ruling, whenever statements about impairments are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on the entire case record. Tr. 17. The ALJ found that Plaintiff's statements concerning her impairments were not entirely credible, as Dr. Hoffman found no evidence of any respiratory problem during his 2012 consultative evaluation. Tr. 18-19. Thus, the ALJ did not err by omitting this alleged impairment from his Step 3 analysis.

Additionally, Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's radiculopathies by making a non-evidentiary declaration, thus frustrating the intent of a Step 3 comparison between medical evidence of pathology and requirements of the listing. The Court disagrees. Plaintiff claims that she suffers from nerve root compression and meets or equals Listing 1.04A, but to meet or equal this Listing, the Plaintiff must demonstrate evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in psuedoclaudication. Newman v. Colvin, No. 14-5995, 2016 WL 1090435 (D.N.J. Mar. 21, 2016). In this case, the ALJ held that the Plaintiff has failed to meet this burden. The record shows that diagnostic imaging in January 2013 only demonstrated mild cervical spine degenerative changes, and an intact lumbar spine with well-maintained disc spacing. Tr. 290-91. Further, Plaintiff's physician stated in December 2012 that the Plaintiff was "physically fine." Tr. 280. Dr, Hoffman found that the Plaintiff walked with a normal gait, had no trouble getting on or off the table, showed no major motion restrictions, and could even bend forward and touch her toes, thus demonstrating no evidence of any reflex or neurologic deficit. Tr. 288-89. Plaintiff is able to cook, drive, clean, shop, and take the garbage out, and she does not use a walker, cane, or even a brace or splint to aid her in these endeavors. Tr. 15, 289. Plaintiff has not sought treatment in close to a decade for any spinal disorder, following a successful epidural treatment in 2008. Tr. 18. Therefore, the ALJ found that Plaintiff's degenerative disc disease does not meet or equal Listing 1.04A, as she has been unable to present evidence of a spine disorder in compliance with the requirements of 1.04A.

### iii. The ALJ correctly found Plaintiff's mental disorders do not meet or equal 12.06

Finally, Plaintiff alleges that the ALJ erred when subjectively disqualifying Plaintiff's alleged psychiatric disorders during the Step 3 analysis, by not combining or comparing alone to paragraph 12.06A, instead using only paragraph 12.06B. Plaintiff argues that by comparing her

alleged mental disorders with paragraph 12.06B, the ALJ circumvents making an objective analysis in favor of a more subjective analysis. The Court disagrees.

In order to establish presumptive disability, Plaintiff must prove that she meets all criteria of Listing 12.06, both paragraphs A and B. Perez v. Comm'r of Soc. Sec., 2:14-cv-5551, 2016 WL 3509304, at *6 (D.N.J. June 27, 2016). Paragraph B of 12.06 requires the Plaintiff to demonstrate at least two of the required symptoms, such as a marked restriction of daily living activities, repeated extended-duration decompensation episodes, marked social functioning difficulties, and marked concentration, persistence, or pace difficulties. 20 C.F.R. pt. 404, subpt. P, app'x 1, at 12.06. The ALJ found that the Plaintiff demonstrated no daily living restrictions, only moderate social functioning difficulties, and no extended-duration decompensation episodes. Tr. 15-16. Plaintiff admits that she takes no prescribed medication and has never been to a psychiatric hospital or participated in outpatient mental health care, and the ALJ noted the she has not produced a single medical opinion indicating disabling mental health symptoms, and has performed daily living activities that demonstrate substantial functionality. Tr. 15-16. The ALJ noted that the Plaintiff is able to get along with others, including those in a position of authority. Tr. 15. She socializes, visits a park near hear home, spends time with her family, and goes to church. Tr. 15-16. Accordingly, the ALJ found that the Plaintiff failed to meet the requirements of 12.06B, rendering a paragraph 12.06A analysis unnecessary. Perez at 6. Ultimately, the ALJ found that the Plaintiff was unable to demonstrate through the record that her alleged physical and mental impairments met or equaled a listing.

2. **The ALJ Properly Concluded that the Plaintiff Can Perform the Requirements of Light, Unskilled Work**

Plaintiff argues that the RFC assessment that Plaintiff can perform a limited range of light, unskilled work is not based on substantial evidence, and that the ALJ erred by not offering specific

rationale with citation from evidence in support of his RFC determination, instead opting for "vague, conclusory findings seemingly oriented to the objective of denial." Pl. Br. at 25. The Court disagrees.

Plaintiff primarily argues that the exertional RFC for light work is completely unexplained. This argument fails. The ALJ's opinion demonstrates that he did consider and cite the evidence when making Plaintiff's RFC assessment, and frequently cites the record when discussing each impairment. Tr. 16-21. Plaintiff further argues that an alleged non-listing level pulmonary impairment carries an exertional impact, yet the Plaintiff has not been able to contradict her treating physician's finding that she was "physically fine." Tr. 280. Plaintiff contends that her spinal disorder has been ignored by the ALJ, yet she herself has not sought any treatment for her allegedly disabling spinal disorder in close to a decade, except for less than a year of "homeopathic" treatment ending three years before her hearing. Tr. 32, 38. In fact, the ALJ noted that the Plaintiff has not offered any evidence that would substantiate claims of more significant limitations than the ones considered by the ALJ's RFC determination. In an RFC determination, the ALJ does not have to include all limitations alleged by the claimant, only those impairments credibly established by the claimant. Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).

In this case, the record supports the ALJ's RFC determination, and the ALJ clearly offers specific rationale with citation from evidence, with supporting medical opinions from both the consultative examiner and Plaintiff's own physician, as well as Plaintiff's own accounts of her daily routine in making his assessment of Plaintiff's RFC. Tr. 16-21. There is nothing to indicate that the ALJ is relying solely on his own lay opinions, nor is there any evidence that the ALJ's findings are designed with the objective of denial.

**CONCLUSION**

Because the Court finds the ALJ's decision is supported by substantial evidence, the Commissioner's denial of disability benefits is **AFFIRMED.**

**Dated: October 23, 2017**

/s *Madeline Cox Arleo*
**HON. MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**